Jasen, J.
(dissenting in part). I agree with the majority that, for purposes of prosecutions brought under the Vehicle and Traffic Law, section 1194 of that statute provides the exclusive method of extracting blood from a motorist believed to be intoxicated. Therefore, in People v Moselle, I vote to affirm. I also agree that section 1194 of the Vehicle and Traffic Law does not prohibit the extraction of blood from a nonconsenting motorist for purposes of prosecutions brought under the Penal Law. I cannot, however, join in the majority’s conclusion that CPL 240.40 prohibits the administration of a blood test in the absence of a court order authorizing the taking of a blood sample from an intoxicated motorist. Therefore, in People v Wolter and People v Daniel, I cast my vote to reverse.
CPL 240.40 is, as its title clearly states, a “discovery” statute. It governs the exchange of evidence only in the course of an ongoing criminal proceeding and not warrant-less searches undertaken by the police at the initial stage of an investigation to determine whether a crime has even been committed. By its express terms, CPL 240.40 only applies when “an indictment, superior court information, prosecutor’s information, or information is pending” (CPL 240.40, subds 1, 2) and authorizes the court in which such an accusatory instrument has been filed to issue an order requiring the “defendant” to submit to a blood test. As we have only recently noted, absent commencement of a criminal proceeding, there can be no “defendant”, and the authority of CPL 240.40 cannot be invoked against one whose status is merely that of a suspect. (Matter of Abe A., 56 AD2d 288, 294, n 2.)
Nor does the legislative history of CPL 240.40 support the majority’s view that this statute was intended to preempt authorization for blood tests administered by the police in furtherance of a criminal investigation. The sole aim of this statute was to remedy the “haphazard and unregulated” discovery that in the past had pervaded *112 criminal proceedings while at the same time “accommodating reasonable concerns of prosecutors and defense counsel.” (Memorandum of Office of Court Administration, 1979 McKinney’s Session Laws of NY, pp 1888-1889.) Contrary to the majority’s suggestion, the reference in the Governor’s bill jacket to the “procedure available to each side for protective orders” can hardly be viewed as an implicit recognition that CPL 240.40 provides “the exclusive premise for taking blood samples.” (At p 110.) The “protective orders” mentioned in the bill jacket refer to CPL 240.40 (subd 3) which expressly ties in the provisions of CPL 240.50 dealing with protective orders issued in the course of a pending criminal action.
Assuming that there was any doubt as to the scope and effect of CPL 240.40, the Legislature has expressly provided that the subdivision governing discovery by the prosecutor “shall not be construed to limit, expand, or otherwise affect the issuance of a similar court order, as may be authorized by law, before the filing of an accusatory instrument consistent with such rights as the defendant may derive from the constitution of this state or of the United States.” (CPL 240.40, subd 2 [emphasis added].) Surprisingly relied upon by the majority, this caveat establishes beyond cavil that the Legislature intended that CPL 240.40 was to have no effect on the existing law governing the procedures for obtaining evidence, “especially in the pre-accusatory instrument stage.” (Bellacosa, Practice Commentaries, McKinney’s Cons Laws of NY, Supp Pamphlet 1972-1981, CPL 240.40, p 358.)
In short, CPL 240.40 is directed at regulating the exchange of evidence in the adversarial context of a pending criminal proceeding. There simply is no basis, either in the express language of the statute or its legislative history, for the majority’s conclusion that CPL 240.40 pre-empts authorization for blood tests administered in the course of a criminal investigation to determine whether there has been a violation of the Penal Law.
Having established that neither section 1194 of the Vehicle and Traffic Law nor CPL 240.40 prohibits the use of the blood samples taken from defendants Wolter and Daniel for purposes of preserving potential evidence of *113 their blood-alcohol content in conjunction with prosecutions brought under the Penal Law, it becomes necessary to resolve the further issue — not reached by the majority due to its disposition — whether the nonconsensual extraction of blood from a motorist believed to be intoxicated is constitutionally proscribed. I conclude that it is not.
The constitutional claim raised by the defendants has, for the most part, already been decided. In Schmerber v California (384 US 757), the driver of an automobile was involved in an accident and placed under arrest. While receiving treatment at a hospital, the driver was compelled, over his explicit objection, to submit to a blood test. Acknowledging that the seizure of blood is subject to Fourth Amendment considerations, the Supreme Court held that the results of the test did not have to be suppressed. The court recognized that such blood samples provide an “effective means of determining the degree to which a person is under the influence of alcohol” and that the type of intrusion involved was minimal. (384 US, at p 771.) Particular reliance was placed on the fact that “the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system.” (Id., at p 770.) Given the highly evanescent nature of the evidence sought, the court concluded that no warrant was required before the blood sample could be taken.
Recently, in an analogous situation, we, too, have held that it is constitutionally permissible to obtain a blood sample from a suspect provided there is (1) probable cause to believe the suspect has committed a crime; (2) a “clear indication” that relevant material evidence will be found as a result of administering the blood test; and (3) the method used to obtain the blood is safe and reasonable. (Matter of Abe A., 56 NY2d 288, 291, supra.) Although Matter of Abe A. involved an instance in which a court order was obtained authorizing the test, we emphasized that, unlike the present cases, there were no exigent circumstances which justified the immediate, warrantless removal of the blood sample from the suspect’s body.
Measured by the standards set forth in Schmerber and Matter of Abe A., the blood samples taken from defendants *114 Wolter and Daniel should not be suppressed. In both cases, the police had probable cause to believe the defendants had committed a crime. Moreover, there were signs that both defendants had been drinking just prior to the accidents in which they were involved. Thus, there was a “clear indication” that administration of the test would reveal the presence of alcohol in their blood. Finally, there is nothing in the record to suggest that the method used to obtain the sample from either defendant was unsafe or unreliable.
Nor is there any merit to defendant Daniel’s argument that the results of the blood test should be suppressed because he was not under arrest at the time the sample was taken. Quite simply, “[tjhere is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect * * *. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.” (Hoffa v United States, 385 US 293, 310; accord Matter of Abe A., supra, at p 297.) Given the exigent circumstances caused by the evanescent nature of the evidence sought and the minimal intrusion that was involved, the blood sample was properly taken from defendant Daniel even though he was not formally under arrest at the time. (See Cupp v Murphy 412 US 291.)
By holding that no blood tests can be administered in the absence of a court order, the majority has, for all practical purposes, eliminated a very important procedure as a method of establishing the intoxication of a motorist responsible for the death or serious physical injury of another. In most, if not all, cases, the percentage of alcohol in the blood will be greatly dissipated by the time the police have finished their preliminary investigation and sought out a magistrate to secure a warrant. Indeed, even with the passage of a very brief period of time, the results of a blood test will not provide an accurate reading of the motorist’s blood-alcohol level at the time the accident occurred. Given the ever-increasing number of fatalities *115 linked to the intoxicated driver,* the Legislature could not have intended to impose the restriction that the majority has placed on the legitimate and constitutionally permissible investigative efforts undertaken by the police to determine whether the Penal Law of this State has been violated.
In People v Moselle: Order affirmed.
Chief Judge Cooke and Judges Wachtler, Fuchsberg and Meyer concur with Judge Jones; Judge Jasen concurs in a separate opinion; Judge Gabrielli taking no part.
In People v Daniel and Wolter: Orders affirmed.
Chief Judge Cooke and Judges Wachtler, Fuchsberg and Meyer concur with Judge Jones; Judge Jasen dissents and votes to reverse in a separate opinion; Judge Gabrielli taking no part.

 Statistics provided by the Department of Motor Vehicles reveal an alarming increase in the number of State-wide fatalities arising from alcohol-related automobile accidents over the past few years. In 1979, there were 482 fatal accidents resulting in 535 deaths. The following year, 670 accidents took 737 lives. By 1981, 884 alcohol-related accidents resulted in 979 deaths. (Department of Motor Vehicles Annual Summary of Motor Vehicle Accidents.) In his memorandum approving increased penalties for the intoxicated motorist, the Governor noted that in 1980 “alcohol was a factor in more than half of all vehicular fatalities in New York State.” (1981 McKinney’s Session Laws of NY, p 2636.)